COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Bumgardner and Clements
Argued at Salem, Virginia


JAMES EDWARD JUSTUS

v.      Record No. 1220-03-3

COMMONWEALTH OF VIRGINIA


JEFFERY DEWAYNE WAYNICK
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 1234-03-3               JUDGE RUDOLPH BUMGARDNER, III
                                                    JUNE 1, 2004
COMMONWEALTH OF VIRGINIA


KEVIN LEE MEADOWS

v.      Record No. 1291-03-3

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Wayne T. Horne (Wayne T. Horne, P.C., on brief), for
James Edward Justus.

James R. Henderson IV (Henderson & Forster, PLLC,
on brief), for Jeffrey Dewayne Waynick.

John L. Moss for appellant Kevin Lee Meadows.

Alice T. Armstrong, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on briefs), for appellee.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

A jury convicted James Edward Justus, Jeffery Dewayne Waynick, Kevin Lee Meadows, and Robert Shawn Stump of malicious wounding at a joint trial. The trial court sentenced each of them in accordance with the verdict to ten years in prison. Defendants Justus, Waynick and Meadows appealed on the ground the trial court excluded evidence of the nature of the victim's prior felony convictions. The Commonwealth concedes the error but contends it was harmless. We conclude the error was harmless and affirm.

The trial court erred in excluding evidence offered by the defendants during cross-examination of the victim. This evidentiary ruling is harmless "'[w]hen it *plainly appears* from the record and the evidence given at trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*) (quoting Code § 8.01-678) (emphasis added in Lavinder).

The victim and all four defendants were inmates in the Buchanan County jail. When the victim was asleep, Justus and Stump grabbed his feet through the bars of his cell while Meadows and Waynick hit him about the head. They pulled the victim out of bed, and all four stomped and kicked him. After the assault, Waynick taunted the victim from outside the cell saying, "Come on out and fight me like a man." The victim sustained scratches and bruises to his body, ocular trauma to the left eye, a black eye, hearing loss in the left ear, and a bloody nose. Photographs show the victim's condition shortly after the beating. No one else required medical attention.

Gary Chaney, an inmate in a cell next to the victim, heard some people say they were "going to jerk somebody out . . . [l]et's get him out by his feet . . . ." He heard thumping and bars rattling. Chaney exited his cell, saw the defendants and others standing around, and heard Waynick say, "come on out of there and fight one on one."

The four defendants and two other defense witnesses contradicted the victim. All six testified the victim picked a fight with a smaller inmate. Meadows intervened and told the victim to pick on someone his own size. The victim approached Meadows, swung at him, but Meadows ducked. Meadows then swung back, and the two fought until Waynick and Stump broke it up. No one else took part.

Counsel for each of the four defendants cross-examined the victim. They impeached his credibility by asking about his prior convictions: "Have you ever been convicted of a felony or a misdemeanor involving lying, cheating or stealing?" The victim responded that he had. When asked the number of felony convictions, the victim responded, "[B]est of my knowledge two (2)." The error occurred when the defendants asked the nature of the convictions and the trial court sustained the Commonwealth's objection. Although the defense did not develop the information until after trial, the victim had been convicted in North Carolina in 1998 of burglary, possession of a controlled substance, which may be a felony, and petit larceny. He had been convicted of distribution of oxycontin in Buchanan County after the fight but before this trial.

Code § 19.2-269 provides, "[a] person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit." Hummel v. Commonwealth, 217 Va. 548, 550, 231 S.E.2d 216, 217 (1977), held the jury is entitled to know the number and nature of a witness' felony convictions.

In Hummel, an accomplice provided the only evidence of the defendant's participation in the breaking and entering. The accomplice was granted immunity for that crime, as well as for others, in exchange for testifying against the defendant. The Supreme Court concluded the trial court erred when it excluded evidence of the nature of the accomplice's prior felonies, which included an earlier breaking and entering conviction.

In Johnson v. Commonwealth, 224 Va. 525, 298 S.E.2d 99 (1982), again an accomplice provided the only evidence implicating the defendant with the crime charged, statutory burglary. The accomplice admitted to eight prior felony convictions, which included convictions of grand larceny and statutory burglary. The accomplice agreed to testify against the defendant after the Commonwealth *nolle prossed* a pending drug charge. The error of excluding the nature of the accomplice's prior felonies was not harmless.

In Johnson, the Supreme Court noted the striking similarity to the facts in Hummel. The Hummel Court stressed the witness was an accomplice,[1] offered uncorroborated testimony of the defendant's involvement, was offered immunity in exchange for testifying, and had made prior inconsistent statements. Thus, the two unrelated convictions were particularly relevant to determining credibility.

In Johnson, the witness was also an accomplice to the crime being tried. He had prior convictions for similar crimes, faced new charges, and stated that he decided to testify after the Commonwealth dropped a pending marijuana charge. The witness was susceptible to the hope of favor if he cooperated or of retribution if he did not. The Court concluded the jury may have concluded his testimony was motivated by hopes of leniency if they had known the nature of his prior convictions.

The facts in this case are significantly different. The witness being impeached was not an accomplice but the victim of the crime being tried. The prior convictions for burglary and drugs were not similar in nature to the charge being tried, malicious wounding. The crime took place

---

[1] The credibility of an accomplice's testimony "will be a significant factor in the jury's determination of the accused's level of culpability." Lilly v. Commonwealth, 258 Va. 548, 553, 523 S.E.2d 208, 210 (1999). While a defendant may be convicted on the uncorroborated accomplice testimony, the trial court is required to "warn the jury of the danger of basing a conviction upon such uncorroborated testimony." Johnson, 224 Va. at 527-28, 523 S.E.2d at 101.

in jail, and all the witnesses, except the jailer, were felons.  The witness did not receive favorable treatment or immunity in exchange for testifying, and the witness had no charges pending for which he could have received leniency.

To determine whether an error is harmless, we consider "'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of a witness on material points, the extent of cross-examination otherwise permitted and . . . the overall strength of the prosecution's case.'" Helmick v. Commonwealth, 38 Va. App. 558, 566, 567 S.E.2d 551, 555 (2002) (quoting Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641-42 (1990) (*en banc*)).  "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same."  Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.

The trial court excluded the nature, not the number, of the victim's prior felonies.  This case involved a jailhouse fight among incarcerated felons.  From *voir dire* on, the jury knew all witnesses to the incident were convicted felons.  The defendants extensively cross-examined the victim but primarily relied on impeachment by contradiction to attack his testimony.  The nature of the prior felonies was not of particular importance during the defense.  The defendants did not request an instruction that the victim's prior convictions could be used when assessing credibility, nor did they argue impeachment by prior felony in their closing arguments.

The nature of the victim's prior felonies was not particularly relevant to determining the credibility of the testimony in this case.  The essential issue for the jury was who started the fight.  Six defense witnesses, all felons, presented a story that contradicted the victim.  However, the victim's testimony was corroborated in important respects by Gary Chaney, the photographs of the victim's injuries, and the absence of injuries to anyone else.

We conclude the error was harmless because it is unlikely that naming the victim's prior felonies would have added to the impeachment potential of being a felon. The exclusion of the nature of the victim's prior felony convictions did not substantially affect the verdict. "'If, when all is said and done, the conviction is sure that the error [in omitting testimony] did not influence the jury, or had but slight effect, the verdict and the judgment should stand.'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)). Accordingly, we affirm.

Affirmed.