COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

AARON LOUIS GOLDBERG

v.      Record No. 0007-19-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
NOVEMBER 19, 2019

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Roger A. Whitus, Assistant Public Defender, for appellant.

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Following a jury trial, Aaron Louis Goldberg ("appellant") was convicted of driving

under the influence ("DUI"), third conviction within ten years, in violation of Code §§ 18.2-266

and -270. In accordance with the jury verdict, the trial court sentenced appellant to four years'

incarceration and imposed a fine of $1,000.

On appeal, appellant contends that the trial court erred by denying his motion to exclude

evidence of a horizontal gaze nystagmus ("HGN") test performed by the officer who pulled him

over. Appellant argues that HGN tests are scientific yet lack sufficient reliability for admission

into evidence. Even assuming, without deciding, that appellant is correct, any error in the

admission of HGN testing was harmless in light of the facts and circumstances of this case.

Therefore, this Court affirms the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672 (2004)). So viewed, the evidence is as follows:

On the evening of April 22, 2017, Officer Travis Aicher was on patrol in Virginia Beach. At approximately 11:44 p.m., he was driving on a two-lane highway. The two lanes were separated by double yellow lines, and each lane had a narrow shoulder that was separated from the lane of travel by a solid white line. Officer Aicher came up behind appellant's vehicle, which was traveling on the shoulder, entirely outside the solid white line. Shortly thereafter, the shoulder abruptly ended and appellant merged into the actual lane of traffic. Appellant's vehicle then crossed the double yellow lines and entered the opposing lane of traffic three times. The road then split into two lanes: one to make a left turn and one to travel straight. Appellant drove half in one lane and half in the other before making a left turn. Officer Aicher then activated his lights and initiated a traffic stop.

As Officer Aicher approached the vehicle he observed appellant in the driver's seat and a second, unidentified male in the passenger seat. Upon request, appellant provided Officer Aicher with his New York driver's license. Appellant could not, however, locate the vehicle's registration card. During this interaction, Officer Aicher detected a strong odor of alcohol emanating from the driver's side window and, seemingly, appellant's breath. Appellant's eyes were bloodshot, and he occasionally slurred individual words. Appellant also admitted that he drank one beer earlier in the evening.

Based on these observations, Officer Aicher asked appellant to step out of his vehicle and walk to his patrol vehicle with him; appellant complied. This request was designed to allow

Officer Aicher to make further observations about appellant's level of intoxication. During this interaction, Officer Aicher continued to smell the odor of alcohol emanating from appellant's breath. Appellant also swayed slightly while walking. After reaching the patrol vehicle, Officer Aicher continued to engage appellant in conversation while standing still. Despite standing still, appellant continued to sway slightly.

During the conversation, appellant explained that he had been involved in a serious car accident in 1996 in which he injured his right knee and left hip. Appellant claimed that these injuries rendered him fully disabled. Appellant, however, did not use a cane or a walker as a result of these injuries. Officer Aicher also asked appellant a second time how much he drank that evening. This time, appellant admitted that he drank "one tall boy Mickey's Malt Liquor" and one beer. Appellant stated that his first drink was a few hours prior to the traffic stop and his last drink approximately thirty minutes before the stop.

At this point, Officer Aicher decided to administer standardized field sobriety tests to appellant. Appellant agreed to voluntarily take an HGN test. Appellant opted not to voluntarily participate in the other two standardized tests—the walk and turn test and the one-legged stand test—because he was concerned that his earlier injuries could affect their results. During the HGN test, appellant displayed all six of the potential "clues" which indicate intoxication. Officer Aicher then administered the "alphabet test" by asking appellant to recite the alphabet beginning at D and ending at S as fast as he could. Appellant stumbled over the letter F and progressed through the alphabet very slowly. Otherwise, appellant recited the alphabet from D to S correctly.

Based on the totality of these circumstances, Officer Aicher placed appellant under arrest for driving while intoxicated. Appellant responded by stating that "[he] knew this was going to happen." Officer Aicher then transported appellant to the jail, where a breathalyzer was located.

During the drive to the jail, appellant told Officer Aicher that "this [was his] third strike, [he has] two other DUIs." He also told Officer Aicher that he guessed that "the higher alcohol content of the malt liquor got [him]." At 1:20 a.m.—approximately 96 minutes after this encounter began—a breathalyzer test was conducted. The test showed that appellant's breath contained .09 grams of alcohol per 210 liters of breath.[1]

On July 17, 2017, appellant was indicted for DUI, third conviction within ten years.[2] The trial court denied appellant's motion *in limine* seeking to exclude any testimony or evidence regarding the HGN test administered by Officer Aicher, and the matter proceeded to trial. The jury returned a guilty verdict and, following evidence related to sentencing, recommended a term of incarceration of four years. At a subsequent hearing, the trial court adopted the jury's recommendation. This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in denying his motion *in limine* to exclude evidence of the HGN test performed by Officer Aicher. Appellant contends that the test is

---

[1] Per standard procedures, appellant's breath is tested twice and a more accurate three-digit test result was generated for both tests. To favor defendants, standard procedure is to select the lower of the two test results and remove the third digit. Here, appellant's two tests both showed .097 grams of alcohol per 210 liters of breath.

[2] Appellant was also charged by warrant for driving on a suspended license in violation of Code §§ 21-1 and 46.2-301 as well as by summons for illegal possession of an inspection sticker in violation of Code § 46.2-802 and failure to maintain his lane while driving a motor vehicle in violation of Code § 46.2-804. Prior to trial, the trial court granted the Commonwealth's motion to *nolle prosequi* the inspection sticker charge and appellant pled guilty to failure to maintain his lane while driving. Neither of these charges are at issue in this appeal.

The charge for driving on a suspended license was tried to the jury, which found appellant guilty. Appellant's opening brief indicates that he appeals from that conviction and concludes by praying that conviction be reversed. However, the only assignment of error granted for appeal by this Court relates to the admission of evidence of HGN testing. This assignment of error has no bearing on the charge of driving with a suspended license. Accordingly, there is no basis to reverse that conviction. Therefore, for clarity, this opinion refers only to the DUI charge.

scientific in nature yet lacked sufficient evidence of reliability for admission. Alternatively, he argues that even if the evidence is sufficiently reliable to justify admission, it is unfairly prejudicial as compared to its limited probative value.

The Commonwealth disagrees with the appellant's premise—that HGN testing is scientific in nature. The Commonwealth contends that HGN testing amounts to mere observations of a person's ocular movements which are no different than observations in other field sobriety tests. Alternatively, the Commonwealth asserts that there is sufficient evidence of its reliability to justify its admission as scientific evidence and support the ruling that its probative value outweighs any prejudice. Lastly, the Commonwealth avers that even if HGN testing is scientific and unreliable, its admission was harmless because there was sufficient alternative evidence to find appellant guilty beyond a reasonable doubt.

Even assuming, without deciding, that the evidence of HGN testing was scientific, lacked sufficient foundational evidence of reliability, and was unfairly prejudicial compared to its probative value in this case, this Court holds that any error in the admission of the HGN testing evidence was harmless when considered in light of the totality of the evidence of guilt.

Evidentiary errors are analyzed under the standard for non-constitutional harmless error. Salahuddin v. Commonwealth, 67 Va. App. 190, 211-12 (2017). A non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259 (2001) (quoting Code § 8.01-678). "Consequently, under Code § 8.01-678, a criminal conviction must be reversed unless 'it plainly appears from the

record and the evidence given at the trial that' the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005 (1991) (*en banc*) (quoting Code § 8.01-678). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Campos v. Commonwealth, 67 Va. App. 690, 717 (2017) (quoting Lavinder, 12 Va. App. at 1006).

Appellant was originally seen driving along the shoulder of the road in lieu of a legal lane of traffic. After merging into a legal lane of traffic, appellant drifted repeatedly in and out of the oncoming lane of traffic. He then drove in the middle of two lanes before being pulled over by Officer Aicher. During the ensuing interaction, there was a strong odor of alcohol emanating from appellant, his eyes were bloodshot, he occasionally slurred words, and he was unable to walk or stand without swaying. Appellant originally reported having one beer earlier that evening, but later admitting he had "one tall boy Mickey's Malt Liquor" and a beer, with his last drink just thirty minutes before being stopped. Appellant was able to recite the alphabet from D to S only at a slow speed and with some difficulty. After his arrest, he told Officer Aicher that this charge would be his "third strike" because of two prior DUIs and that he guessed "the higher alcohol content of the malt liquor got [him]." A breathalyzer test conducted over an hour and a half after the traffic stop registered a blood alcohol content that was *still* over the legal limit.

On these facts, this Court concludes that substantial justice was reached. There is overwhelming evidence of guilt in this case. Therefore, this Court holds that any error in admitting the HGN evidence was harmless.

### III. CONCLUSION

This Court assumes, without deciding, that the evidence of HGN testing was scientific, not supported by sufficient foundational evidence of reliability, and unfairly prejudicial

compared to its probative value in this case.  Any error in its admission, however, was harmless in light of the overwhelming evidence of appellant's guilt.

<u>Affirmed.</u>